It's Yuga Labs v. Ryder Ripps, 22-56199. I represent appellants Ryder Ripps and Jeremy Cahan in this matter. Your Honors, the NFTs in this case are expressive, both in and of themselves, and because they are part of a broader artistic project. However, if Your Honors do not wish to go that far, an easier path to reverse is to hold that they are at least conduct in furtherance of protected speech. That is, the broader public criticism that Mr. Ripps engaged in well before the NFTs in this issue. I'd like to turn to the legal standard for that because I think this was the subject of some confusion in the briefs. The anti-SLAPP statute provides a protection for conduct arising in furtherance of protected speech. In this case, we've invoked the E-4 provision, which is defined as conduct in furtherance. The conduct does not need to be independently protectable speech. That's the domain name case we cited in our brief. That's the Wilson case, which dealt with a fired reporter. And frankly, it also appears in the Bonney case that my colleague cites routinely throughout their brief. And I'll just want to make sure that I've read that into the record so it's very clear. That provides at 11 Cal 5th at 1020 that you need not show, quote, expressive conduct, just that the conduct advances the defendant's ability to speak. That's at 1022. So here, I think it's undisputed based on the allegations of the complaint that the NFTs, at a minimum, were part of the broader criticism in this case. And that's paragraph 48 in the complaint, Your Honors, and I can quote that directly to you if you like, but they make the connection there. We submit that's sufficient here for us to prevail to anti-SLAPP Step 1. Now, the district court, Your Honors, went astray because he looked to two considerations that are counter to this Court's case law and to the California Supreme Court's case law. One of them was he considered the form of the action instead of the underlying conduct. So he said, for example, maybe you could have won under anti-SLAPP Step 1 had you brought a defamation claim, but that's not the case here. Your Honors, the Nivelliere case, which we cite in our brief and which, unfortunately, the other side ignores, says that we look to the conduct underlying the cause of action and not to the cause of action of the way it was framed. The Nivelliere case itself involved a breach of contract, for example. There are other cases that involve intellectual property rights, like the Hilton case that Your Honors decided in 2010. The other ground for the district court's ruling was that the conduct here was too commercial. Now, again, the test does not express a speech for conduct in furtherance of speech. It just has to be conduct that's connected to the speech itself. On the first piece, it refers to the statute refers to the act arising from any act of that person in furtherance of speech. So I guess I'm trying to identify some limiting principles in terms of which acts in furtherance of it wouldn't be subject to an anti-SLAPP motion. So the act here is trademark infringement along with, I believe, several other claims that I didn't see your brief addressing separately. But what's the, would simple trespass, if your client went up to the place of business and staged a sit-in in UGLAB's business place, would that be an act in furtherance of it? What's the limiting principle for us to decide that some acts, it can't really be any act in furtherance of it. There have to be acts that are so attenuated from the speech that the anti-SLAPP statute doesn't cover them. So where's that line? Your Honor, the Bonney Court describes it as substantially connected, I think. I believe that's the quote. A substantial relationship is the precise quote. In this case, Your Honor, and this is all from the allegations of the complaint, Mr. Ripps engaged in public vocal speech about the racist and anti-Semitic tropes in the board API club NFTs. But that's not the act that's at issue in the complaint. I understand, Your Honor, but I'm just trying to explain the connection between the speech and the act, which then led organically to the NFTs issue in this case. The NFTs in this case further that expressive act in two ways. And I just want to set briefly on what an NFT is because it's important to the first concept here. So as Your Honors, I presume, know, an NFT is an entirely digital certificate that points to a digital item, for example, a picture or a purse. It doesn't, the purse or the picture are not the product. They can be conveyed, but they're not necessarily conveyed. So the best example I can give you, Your Honors, is the Name a Star After Someone programs that were very popular a couple of years ago. You pay $50 and you can name a star after your favorite nephew, Joshua. And that the North Star now becomes Joshua's star. He gets a fancy certificate he can hang up in his room. But of course, Joshua can't require astronomers to call the star the North Star. He can't stop other companies from labeling them Tom Star or Todd Star. The only thing that you get when you purchase an NFT is this ownership certificate, which points to something else. And I think that's the crux of the complaint, isn't it? Is that the acts that are actually at issue that your client claims are as in furtherance of his rights to free speech are selling identical images under, if not identical, then allegedly quite confusing links on identical marketplaces. And it strikes me that there's no act of protest if you just isolate those pieces. Would you agree? I would disagree, Your Honor. So I would point you to ER26, which is Mr. Ripp's website, which is indisputably incorporated by reference into the complaint that lays out the artistic purpose here. Right, but those aren't attached to the act. They're not complaining about those acts. We're looking at the act here. And the infringing acts is not his explanation going someplace else. The infringing acts is him selling the same images on the same marketplaces on virtually indistinguishable NFT identifiers. So, Your Honor, I do think this is an important distinction. He's not selling, they are not selling the pictures. They are selling the ownership certificate. Just as you are not selling the star when you name a star after somebody, you are pointing to it. The fundamental nature of an NFT is just that certificate. And my understanding, by the way, is that the— But haven't you still appropriated it? What your client calls art, they call appropriation. Well, so all we're talking about is that NFT certificate. And what he added to it was the phrase, Ride or Rips, Board Ape Yacht Club. And that comments in two ways. One, it comments that anybody else can do the same thing that he did, which is, Your Honors could do this yourselves right now on your iPads. You could enter in the right URL and you would get to that same picture of a board ape. Anybody can point to it. Anybody can issue a certificate like that. That's part of the expressive purpose. The other part of the expressive purpose is he has been a vocal critic and he is well-known in the NFT community as being very anti-Board Ape Yacht Club. So just to give yourselves— But hang on, hang on. For two separate purposes. Right. And we're focused—the complaint is about the first purpose. Your Honor, they're both incorporated by reference in the website. They're also referred to in the complaint that describes— I think it's the—there's a tweet that's squibbed in full that talks about this being a provocation, that it's meant to illuminate what the BAYC is and show NFTs for what they— So any illegal act that is a provocation that can be identified on some separate website someplace else as an act of protest is subject to the first prong of the anti-SLAPP statute? I think so, Your Honor. And for two reasons. So first of all, there is a very narrow criminal law exception to anti-SLAPP Step 1. We covered it in the briefing. It's the Flatley case. And that requires one-to-one lineup with a criminal— a violation of criminal law, in that case, criminal extortion. And it also requires a concession by the defendant that the act is, in fact, criminal, which we don't have here. Or clearly convincing evidence that it is. And in this case, of course, we have our First Amendment defenses. So I would say that there is that exception that you're referring to. There is kind of a safeguard there. If it's short of criminal conduct, what isn't in furtherance of? I think that's really the crux of it, at least for me. And I think that's what Judge Johnstone is asking you as well. I think, Your Honors, if there is a sufficiently tight means-end fit between the speech, which in this case was the vocal criticism, and the NFTs, that is sufficient. So to use the storefront kind of boutique analogy that comes up in the briefs, if it's set-aside theft, we'll just talk about conversion. Let's imagine a jurisdiction where it's not against the criminal law. It goes into the store where there are board ape stuffed toys, takes one of the board ape stuffed toys, and then marks it up and doesn't pay for it. Just converts it. That's in furtherance and would be subject to prong one of the anti-SLAPP. I think that's correct, Your Honor, unless you fall under the Flat Lake exception, which is, I think maybe you could make that out in that case, that if you've gone into a store and you've ridden all over something, maybe you're destroying property, there might be a crime you might be able to link that to. But the point here with the anti-SLAPP statute is it's supposed to be a prophylactic. It's supposed to go a little beyond the bounds of the First Amendment to make sure that you're not threatening people with chilling speech and litigation, as is the case that happened here. Punching Yugo Labs founders in the face on a TikTok video? Again, assuming that in this jurisdiction, it's not a crime. That's just a positive distinction, whether the jurisdiction wants to make it a crime. But just simple battery as a tort. Your Honor, I think that if I were going to apply Flatly as it's written and as if the courts have understood it, then you could potentially get the anti-SLAPP one. But I'm not aware of a jurisdiction that would say that you could punch someone in the face and it wouldn't be a criminal crime, which is why I think that hypothetical doesn't quite work. But, Your Honors, I do want to make clear. So there's basically two ways that you can win here. I was trying to point you towards what I think is the cleaner one, which is just to say this is conduct that is connected to the vocal speech. Did you say two ways we can win? Well, all of us can win, really, if you reverse. But, Your Honors, there are two ways that we can win here. I apologize. One of which is the... You can follow, and I'm still not seeing it. So go right ahead. Well, I'm happy to answer questions if I'm not being clear on this. Well, I'm looking for a limiting principle. And I think we all are, but I don't want to speak for my colleagues. We're looking for a limiting principle if this is permissible. And I didn't hear what you said. It sufficiently means and fit. Okay. Well, the means and fit is that the criticism is about the Board of NFTs and about how they're anti-Semitic and racist. And these NFTs are part of that project. They go to criticizing exactly what the NFTs are in the first instance, and they criticize the anti-Semitic and racist tropes in them. And let me explain why that... I understand that, counsel, but you're still... We're still looking for where you limit conduct that would be in the furtherance of. And I just don't know where you draw the line. Yeah. Well, Your Honor, first of all, there's the Flatley exception, which we've been discussing. Yes. But I think... I'm not aware of any court that has gone beyond just saying there has to be a substantial connection. Well, tell us what... If you were going to write this opinion, how would you write it? What rule do you think we ought to adopt? I would say that in this case, at a minimum, the NFTs are conduct in furtherance because there is a substantial connection between the public criticism and the criticism in the NFTs by putting Rider-Ripps, Board Ape, Yacht Club in there. This matters, Your Honor. I want to give you an example because I do think examples are helpful here. Okay. Imagine people for the ethical treatment of animals. And they sold something called PETA's Chicken McNuggets. PETA's what? PETA's Chicken McNuggets. Okay. That would have a very different meaning because PETA is critical of factory farming. It's critical of animal cruelty than just selling something as Chicken McNuggets. The same hypothetical would apply with Greenpeace's SeaWorld, right? If you say Greenpeace's SeaWorld, you immediately conjure up images of animal confinement, of bad things, where SeaWorld by itself might be a fun day at the water park. Right. I mean, grant you the nominative fair use, the non-source identifying use that would not be subject to Jack Daniels. Those seem to be on the other side of whatever line we're trying to get at than selling the same image via a virtually indistinguishable NFT through the same marketplace and then talking about how you're eating the lunch of the person who's you're protesting against in terms of getting, cannibalizing their sales. Your Honor, I'd have to be crystal clear here. They were not selling the pictures in this case. They were just selling the ownership certificate and that is the relevant unit we're looking for. And that's why the name RRBAYC or Rider Rip Sporting Yacht Club matters. That's what you're pushing up side to side here. The picture is not the product here. And in fact, if it were, I suspect they would bring a copyright claim against that, which they haven't. This is just the trademark case. So again, Judge Kristen, the best I can answer your question here is looking at the allegations of the complaint themselves. And again, I would point you to paragraph 48, where they say that the NFTs here were part of a broader harassment campaign. Now we obviously disagree with that derogatory language, but we are at the motion to dismiss stage and they themselves wrote that in. We think that is sufficient conduct and furtherance. Your honors, I want to very briefly touch on Rogers and nominative fair use. And Judge Johnson, one small correction. I don't believe Jack Daniels would apply to nominative fair use. I think it would just apply to the Rogers test. I'm happy to answer either. If there's one your honors would rather hear about, I'm happy to discuss. Otherwise, I'll probably start with Rogers. All right, I'll begin with Rogers. So Rogers, I think, fortunately has much of the same analysis we've done. I think that the anti-slap step one is a lower bar. This court has held that it's different than just the straight First Amendment analysis, but it's a similar analysis. The NFTs are expressive in the sense that they convey a message about what NFTs actually provide. That is the certificate and not the picture. And because they are a way of critiquing the broader board APR club, just as PETA's Chicken McNuggets would critique Chicken McNuggets. Now, if we prevail on expressiveness, that itself would be very helpful to hear. Very helpful to have a ruling on that front. You don't necessarily, even if we don't get to the other things, even if you think that there might be some question of fact on those, that would be fine with us. But on those other steps. I mean, what about the element that it's using more than reasonably necessary? So, Your Honor, that's the nominative fair use defense. Okay, so on the Jack Daniels piece, you're claiming that it's not? Go through the source identifying use analysis. Sure. So Jack Daniels, unfortunately, has not given us a lot to work with. It describes its opinion several times as very narrow. The specific example we have in that case is somebody who wrote into their answer, we treat these as our own trademarks. We have not done that here. There is no similar concession. And I think we don't know where this court will go with Jack Daniels at this point. I'm not aware of any circuit court that has reached the issue. But my understanding is the underlying concern there was that the expression, if any, was very post hoc. At the oral argument itself, counsel for the Squeaky Dog Toy Company was asked, what is expressive about this? He basically said, well, Jack Daniels takes itself too seriously, and so does Stella Artois, and so do all these other brands. And that was it. And here, in contrast, your honors, we have a record months before these NFTs were in place of sustained public criticism and a direct link between that criticism and between... What is that direct link? I'm sorry, your honor. What is that direct link? Your honor, I think the clearest place in the complaint is that paragraph 48 that I cited to you. Just that general section alleges that the NFTs are part of the broader campaign of harassment. And that is a conclusory allegation under ICBO. Where are your facts? You know, your honor, all the surrounding paragraphs on that, I could pull them up for you if you like, but they go to that same basic point. Tell me how a person who goes on the web and sees RR and then slash your logo knows that that's a criticism of anti-Semitism. So, your honor, I think that the RRBAYC... I think was Rolls-Royce, right? I don't think so in the NFT context, your honor. Ryder Ripps is very well known. He's been an artist for well over a decade, recognized in the New York Times. But I think the RRBAYC example is best understood when we think about this with a full name, the Ryder Ripps. How does that tell the reasonable observer that you're criticizing the... What was it? Totenkopf symbol. You don't carry the Totenkopf symbol to say, look, this is what the other people do. They have this Totenkopf symbol and this picture. You can buy it from them and help anti-Semitism. Or you can buy it from us and we don't help anti-Semitism. You don't say that, do you? No, your honor. But I respectfully suggest that for artistic purpose, we don't need to say exactly what we mean. That is the purpose of art. And especially in the conceptual or performance-based art, sometimes the purpose is not so clear. Even if it's lost on the reasonable observer? Your honor, I think in this context, you have to... If I may just respectfully say, the RRBAYC and the BAYC by itself, I think those are best thought of as auxiliary under the 20th century Fox case off of the broader use, which is the Ryder Ripps Bay Board, a yacht club. Ryder Ripps is a very well-known name in the space, almost the same as, again, the PETA example or the Greenpeace example. It has inherent meaning. And once you put that name in front of it, especially given how thin this is, especially, your honor, given that we're talking, again, about a certificate, not about a picture, just basically a couple of lines of code in an Excel spreadsheet, we submit that that is enough, your honor. And frankly, there's no other way to... Our art tells the reasonable observer that they're anti-Nazis? Your honor, I would say that Ryder Ripps Board of Yacht Club does in this context. I recognize we're at the complaint stage. Does what? Does it convey criticism or irony or that this entity is being criticized as opposed to what Judge Bea asked? And he asked a more specific question about. Yes, I would say, I apologize if I didn't directly answer your question. What I was trying to say is that the Ryder Ripps name conveys a sense of irony, because again, this is a vocal public critic of the Board of Yacht Club. And so affixing his name at the front has meaning that affects the rest of it. But go back, if you would, to Judge Bea's point, a reasonable, just a consumer, an observer of this would know, you think, that a criticism is being made because of Ryder Ripps' name being well-known in this space, as you put it, but not necessarily what the criticism is. Is that right? I think the way I would put it is that it is a marker that you'd be able to go back and find things elsewhere. So again, just to refer back to the 20th Century Fox case, there were champagne glasses, there were shirts in that case, which just said the word empire on them. They had no other context. And it was presumed that if you saw that, you'd go out and figure out what the empire referred to. That's Rogers itself, Your Honors. It's not talked about in the majority, but the concurring opinion makes the point that it wasn't just about the movie title. It was actually also about the advertising and the promotional material. So that's what I understood from your briefs, that your argument is in furtherance of what this is, the Ryder Ripps, seeing that as sort of an arrow that points the observer to this other criticism. I think they're distinct arguments. We would be happy, Your Honor, if you wrote an opinion on our favor on that ground. I would say that they're slightly different arguments because as we've briefed the pointing point, I think that's more about the First Amendment protection. And we would say that that's independently protected. I would say that even if you don't want to go that far, you could at least say that it's conduct that's connected to that broader public speech. Okay, you're way over time. I know. So please take a seat. We'll hear from opposing counsel and you can plan on two minutes when you come back. Thank you, Your Honor. Thank you. And thank you for your patience with our questions. Thank you, Your Honor. Good morning. Todd Gregorian of Pendleton West on behalf of the plaintiff, Euka Labs. May it please the court. I'll take up first the conduct and furtherance argument. First, I'd like to raise that was not argued below. The two arguments that were argued to the district court was that this was covered by the catch-all statute because the counterfeiting itself was speech on an issue of public interest, or because you could not separate that counterfeiting activity from all of Mr. Ripps's other activities. But I do think that's what he's arguing. And today they seem to conflate. Those two things do seem to conflict. And I will address that. I said conflate. Oh, conflate. Oh, excuse me. It seems to me the arguments do sort of conflate, but I don't know if that's helpful to you. Well, so I'll take them in three pieces. So let me take first the idea that this is just pure conduct that somehow facilitated his other speech. Bonnie, the California Supreme Court on this subject, holds that to be conduct in furtherance of speech, it must relate to the speaker's ability to speak. And so in that case, for example, the hospital had argued that terminating privileges of a physician was in furtherance of their ability to speak and comment on his performance in the peer review process. And the court rejects that, right? They say there's no necessary relation between the employment activity and the speech. You remain free to speak. And so that later restriction of privileges is not conduct in furtherance of the actual speech that can go on before and after. And that's exactly the case here. Whereas where Mr. Ripps remains free to speak on his websites, regardless of what happens with these claims about his sale of the NFTs. Mr. Sprankling referenced the Collier case, which is about registering a domain name. And there the issue was the domain name was necessary to further the speech of putting up criticism on a public website. Again, here that is not the case. There is no necessary relation between the NFT sales and his ability to speak out on his Gordon Garner website or anywhere else on the internet. So let me come back to what the activities were in this case, right? Because I think they were a little confused in the other side's argument. The fact that this is the sale of an ownership certificate does not matter. The products were the same. They were the same type of ownership certificates that were designed to point to the exact same images with the exact same numbering. And they were sold in the exact same locations. Can I follow up on that? Is that as far as the complaint goes? So to take the Totenkopf example that Judge Baez has discussed. It's hard for us to parse this. On one end, there are some infringing uses that might seem to be easier for you to manage. And on the other end, there are some infringing uses that seem to be a little troubling on the anti-slap side. So where you've got, whether it's a nominative use that they need to refer to the Board 8 Yacht Club or where it's a parody or variation on some of the logos that are used to point that out. Do your claims include that? It looks like your complaint does allege that those are some of the uses at issue. And those uses do seem to be more along the lines of what Mr. Ripps is talking about. Right, and so those are included where there is a sale of an identical NFT under our marks, even if there are slight modifications to the mark. And the reason that is not a problem is because it's a purely source-identified use that we are attacking with the claim. So why wouldn't we get to that in the second step then? Again, I'm thinking about the Totenkopf logo where it's a modification along the lines that Mr. Ripps has said to point out the similarities between the Nazi Totenkopf and the Eagle Labs logo. Sure. The reason we don't get there, Your Honor, is because there is no expression in any of that counterfeiting that expresses a message on an issue of public significance. And that was basically just admitted by my opponent when he got up here and said that it is only a marker. It is only a marker for some other criticism. He's well known in this space and it's going to be understood that it points to, the point to was my verb, a body of criticism. And I think the problem for their side is they run into the Supreme Court's case in Film On, which says there is no synecdoche theory of the anti-slap statute. You cannot at the first step say that my conduct is somehow symbolic of other speech in the public sphere. And the Supreme Court went through 20 years of case history in which California courts have rejected those sorts of arguments. And those included the argument that labeling my product organic is a reference to the advocacy I've done about whether a product should be labeled organic or not. Advertising in telemarketing calls, the sale of herbal supplements is not a discourse on the value of alternative medicine. You do not get to come in and say, my conduct would be reasonably understood to be referring to some broader public debate if the conduct itself does not carry that message. And here it does not. Not even the Totenkopf logo, which is a different image that these are pointing to? So let me clarify something. The products that are sold, the NFTs, do not point to Totenkopf images. Okay, and I'm just trying to, this is a follow-up to your clarification of what your claims are. So is that an infringing use that you claim that Rips's use of that image on his website, sometimes it might be too small to distinguish, but his use of that image, is that within your complaint? The different derivative Totenkopf image, is that within your infringement? I don't think there was an independent claim asserted against him modifying the Totenkopf images. The account states that the issue is he is using Yuga Marks to sell NFTs. How are we supposed to know that it isn't, that you're not gonna, if we affirm that you're not gonna go after him now for that? Because we're already past summary judgment and trial in this case. On the federal claims? On the federal claims, which are substantially indistinguishable as far as the trademark infringement, which is what we're discussing. So just to come back to the issue of what's going on here with the ownership certificate, right? The analogy I would draw the court to is if someone created counterfeit Nikes, but not only sold them on the street, they went into Foot Locker and placed them on the shelves next to Nike. They went into Macy's, put them on the shelves next to Nike. And they rigged the backend system so that when a consumer came into the store and asked, are these Nikes? They would get the response, yes. And that's what the EtherScan allegations are. And so the- Counsel, forgive me for interrupting. Could you bring the microphone closer? Sure. And so the idea that Mr. Ripps can now come into court and say, because I've spoken up elsewhere on the internet and I am notable, that folks would have understood otherwise, it's not- Would have understood otherwise? Would have understood what? That that's me? That it is a counterfeit? That is- Well, would have understood it to be speech on an issue of public importance. The criticism, yeah. Correct. It's a bridge too far, right? It doesn't depend on his notoriety. If Andy Warhol, who had done his Campbell Soup paintings, started sneaking into Safeway and selling counterfeit Campbell Soup next to real Campbell Soup- On the same shelf in the same market, put his can on the shelf. Exactly. So where would we draw the line? Where do we draw the line? Well- We were tormenting opposing counsel about the means and fit for purposes of in furtherance of- Sure. Well, so I think- I don't think this case involves a lot of delicate line drawing, right? I think the court can closely hew to what's in the complaint, which is what the California law directs it to look at, the operative allegations, and say, this is about him doing exactly what we just discussed. So wherever we draw the line in your view,  Exactly, Your Honor. But I mean, I will say that we are very far over that line, right? Because this circuit has said that acts of counterfeiting are not First Amendment protected. Not that they are First Amendment speech or potentially First Amendment speech or expressive and subject to regulation, but that they are just not First Amendment protected. And Jack Daniels, of course, is completely consistent with that. It says, if the use is source designating, you do not need to engage in any other sort of threshold inquiry about what other First Amendment expression might be at stake. And so for this court to hold, as Mr. Ripps suggests, that right in the wake of Jack Daniels, that no, for purposes of California law, we need to ask when someone uses a mark in a source designating way, is there any conceivable other message? It would throw that decision back at the Supreme Court's face. And fortunately, the California Supreme Court has answered this, right? In the Bonney case, the court said that the California legislature did not intend to displace the federal distinction in First Amendment law between speech and non-expressive conduct. And there it held specifically with respect to the catch-all, right? So that in furtherance language does not modify anything in this court's jurisprudence about conduct versus expression. Mr. Gregorio, one of the, I guess, tricky things about this case is trying to draw a line that would not basically just render NFTs, which are quite interesting technological phenomenon, more immune to criticism than other methods of sale, other ways of marketing, et cetera, right? What we don't want to do is just say, well, you know, the district judge said, well, this is commercial, therefore, we're not going to treat that as in furtherance of any protected speech. Are there ways that you'd concede that Mr. Ripps could, you know, for lack of a better term, kind of hack the NFT pointing system to create commentary other than just posting web blogs or commentary on it? I mean, I can think of an endless variety of ways he can comment on Yuga Labs. Through the use of the NFT technology itself. Sure, he could make non-NFTs that point purely to JPEGs of his web pages with the criticism on it. He could, well, I don't want to... I think it's safe to say he wants to reach the same audience that's interested in your client's product, if I can say it that way. So what could he do? I'm sorry, to reach the same audience? If he sold different NFTs on those websites that had nothing to do with Yuga Labs, he could compete with Yuga Labs in that way. If he wanted to sell NFTs that have expressed criticism in it, he could do that. It's got to be okay that they can have something to do with Yuga Labs. The test isn't whether they have nothing to do with Yuga Labs, it's just whether they fall on the wrong side of this line we're trying to find when you claim trademark infringement. And he is using the marks in a non-source designated way, right? If it is a pure parody of Yuga Labs, that is evident from the NFT itself. So is it a question of how prominent Ryder Rips has to appear on the NFT to signal this is somebody else speaking? That goes to confusion, Your Honor. So I don't think so. I think at the first step, the NFT itself would have to be communicating a message, a particular message, not just a marker for a message. That's what's so hard to imagine, what he could do and not do. Exactly. Well, the pointer could be to a JPEG image of text. It could be to a JPEG that says, you know, Yuga Labs is, you know, and insert whatever pejorative. We appreciate your hesitancy to not give the appellant more ideas. But I guess the problem that we're identifying here is you just said, well, that goes to confusion. And of course, that's a second step. And we're trying to figure out what that first step of anti-slap means and act in furtherance of speech means in a way that would not require us to get to that second step in terms of Rogers and the merits. Sure. And I think the way is through, first through Bonnie, which says an act in furtherance, when you're talking about pure conduct, it has to facilitate the ability to speak itself. There has to be some necessary relation between that act and actually making the speech happen. Counsel, what is the scope of our review of Judge Walter's determination? Is it de novo or do we give any deference to it? I believe it's de novo at the first step, Your Honor. I think we're on a pure 12B6 standard. I think the circuit has made that clear in the time that this case has been being briefed, that what happens in these motions in federal court now is that the movement makes an election between a 12B6 challenge and a Rule 56 challenge. And that standard applies at both prongs. And so we're de novo on a 12B6 standard, which would require the court to credit all these allegations that this use was purely source designating, that it was, again, selling the same products in the same stores, disguised to look like the same product. With that, Your Honor, we request that the court affirm. Thank you for your argument. Counsel, you have two minutes to respond. Thank you, Your Honors. Like many others, I'd like to make three points. The first point is just to discuss the two specific anti-SLAPP Step 1 cases. My colleague just mentioned the Bonney case and the FilmOn.com case. The Bonney case defined E2, which is not what we're talking about here. That has to do with speech in conjunction with a government decision. It expressly says at the end it has a separate E4 analysis, and it says the government has not made an explanation for why they would satisfy E4. They haven't shown a link between the action and the speech. I think that's a crucial distinction. That's, I think, at 1022, but you should be able to find it if you control that for E4. What's the difference between an act and conduct and furtherance of the exercise? Act and furtherance is the broader statutory term. Conduct and furtherance is one way of satisfying it. There are three other ways in the statute. But the question is, that's a catch-all, is it not? And I think it's because it encompasses E1, E2, and E3, which deal with other kinds of acts. So, for example, a government decision, on which there's been writing or statements about or things like that. Your Honor, the FilmOn.com case, which was also cited, that dealt with a different part of the antislap statute. That dealt with the question of whether it involved a public interest or not. And as you'll see from the briefs, the other side has not conceded that our speech, if it is indeed speech, is in the public interest because it involves a well-known high-profile company and accusations of racism and antisemitism. So both of those cases are an opposite. I do want to address the Nike counterfeit example because I think this is crucial to understanding our position in this case. That's the wrong analogy. We are not selling a product. We are not selling Nikes that would go into a store. The better analogy is if Nike sold a certificate that said, if you go to this location, you will find a pair of Nikes in a public place. You've made, you've stressed this point. Tell me why it matters. It matters, Your Honor, because I think that, I think it goes to some of the questions you're asking about how thick or how thin this right is and what you can really do with an NFT and convey it. The only thing that the NFT is, is that label and a digital Excel spreadsheet file that identifies something else is authentic. So it shows how narrow it really is. This isn't like taking a whole product that you can use or destroy. Okay. Your Honors, the last point I want to make is that if there's confusion over this, if you think that the district court did not provide the right test, but you want to see how that should work in practice, the answer is to remand and allow for that to happen in the first instance. The last thing I will leave Your Honors on is, at the district court, the federal claims have proceeded and the statement that they made under oath was that they don't want my client to be able to use Forte Viot Club in any fashion or any form. And I think that the arguments here show that problem. I'm not asking Your Honors to consider that as a matter of law, but just as a matter of rhetoric. There is very little we can do to get across the point we want to do other than what we've done in this case. Thank you, Your Honors. You've been generous with your time. Thank you all for your argument and advocacy. We appreciate it very much. We're going to take this case under advisement. That's the last case on the calendar today, so we'll stand in recess.
judges: BEA, CHRISTEN, JOHNSTONE